**Affirmed and Memorandum Opinion filed December 1, 2011.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-10-00901-CV

———————————

### JONATHAN GILCHRIST AND AMERICAN ENTERPRISE DEVELOPMENT CORP., Appellants

### V.

### JAMES W. CARROLL AND BRIGHT HAWK RESOURCES, INC., Appellees

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2007-24990**

## MEMORANDUM OPINION

In this breach-of-contract case, defendant Jonathan Gilchrist argues that the trial court erred in holding him jointly and severally liable with certain corporations for breaching duties owed to plaintiff James W. Carroll. According to Gilchrist, Carroll did not plead or prove fraud or any other basis for holding Gilchrist vicariously liable for the corporations' actions. We conclude, however, that the trial court did not hold Gilchrist vicariously liable, but instead held Gilchrist directly liable for the breach of duties that he and the corporations jointly owed. Although Gilchrist additionally contends that the trial court erred in holding corporations Goldbridge Consulting, LLC and Hepplewhite

Corporation liable to Carroll, Gilchrist lacks standing to raise this challenge, and we do not address it. American Enterprise Development Corporation also filed a notice of appeal, but presented no issues for our consideration. Finding no error in the issues presented for our review, we affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jonathan Gilchrist and James Carroll founded Goldbridge Capital, LLC in 2000. They participated in a number of business ventures together until Carroll decided in 2005 to withdraw from the businesses. In late November or early December 2005, Carroll and Gilchrist executed an agreement in their capacities as individuals and as members, officers, or directors of various corporations. At that time, Gilchrist was the executive vice president of Goldbridge Capital, LLC, and he was the president and chairman of American Enterprise Development Corp., Cyber Law Reporter, Inc. and the Internet Business Factory, Inc. The terms of the agreement included the provision, "Each Party shall take what actions and execute such other agreements as necessary, in order to implement the intent of the Parties to the maximum extent possible."

Carroll later sued Gilchrist for breach of contract, and included as codefendants all of the above-named corporations as well as two additional companies, Hepplewhite Corporation and Goldbridge Consulting, LLC. The claims were tried without a jury, and the trial court found that Gilchrist, Goldbridge Capital, American Enterprise Development Corp., the Internet Business Factory, Goldbridge Consulting, LLC, and Hepplewhite Corporation breached obligations to deliver stock certificates to Carroll and to pay certain debts owed to him. The trial court granted judgment in Carroll's favor, holding Gilchrist jointly and severally liable (a) with Goldbridge Capital for $133,154.00; (b) with American Enterprise Development Corp. for $192,081.31; (c) with the Internet Business Factory for $90,350; (d) with both Goldbridge Capital, LLC and the Internet Business Factory for $842,018, and (e) with both Goldbridge Consulting, LLC and Hepplewhite

2

Corporation for $112,631. In addition to these damage awards, the trial court held Gilchrist and the corporations jointly and severally liable for prejudgment interest; for $251,014.710 in attorneys' fees; and for $12,221.98 in court costs.

Gilchrist did not request original or additional findings of fact, but the trial court incorporated findings of fact in its final judgment. Gilchrist's motion for a new trial was overruled by operation of law.

## II. ANALYSIS

### A. Legal Sufficiency of the Evidence

In the first of two issues, Gilchrist argues that the trial court erred in holding him liable for breaching duties owed to Carroll only by the corporations. We construe this as a challenge to the legal sufficiency of the evidence. To determine whether the evidence is legally sufficient to support the judgment, we review the entire record, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We assume that the factfinder decided questions of credibility or conflicting evidence in favor of the verdict if it reasonably could do so. *Id*. at 819, 820. We do not substitute our judgment for that of the trier-of-fact if the evidence falls within this zone of reasonable disagreement. *Id*. at 822. If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then it is legally sufficient to support the verdict. *Id*.

Gilchrist argues that the judgment must be reversed because Carroll did not plead or prove that Gilchrist is the alter ego of the corporations with which he shares liability, and did not attempt to pierce the corporate veil. *See In re Kenefick*, No. 14-08-00203-CV, 2008 WL 3833842, at *3 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (mem. op.)

3

("Alter ego must be specifically pleaded or it is waived, unless tried by consent."). In making this argument, Gilchrist has assumed that the trial court held him vicariously liable for the corporations' conduct based solely on his relationship with them. *See Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 833 (Tex. App.—Dallas 2011, no pet.) ("Vicarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two."). This assumption is unwarranted.

Given the terms of the Gilchrist's contract with Carroll, the trial court could and did hold Gilchrist directly and personally liable for his own breach of the agreement. The contract with Carroll provided that "Each Party shall take what actions and execute such other agreements as necessary, in order to implement the intent of the Parties to the maximum extent possible." "Party" was defined in the agreement to include Gilchrist in his individual capacity, and in that capacity (as well as in his capacity as a corporate officer) he executed the agreement. In effect, Gilchrist promised that, whether as an individual or on behalf of the various corporations, he would take the actions necessary to fulfill the terms of the agreement. If Gilchrist's breach of this provision caused the corporations to breach their duties under the contract—an implied finding of fact that Gilchrist has not challenged[1]—then he is individually liable. Thus, where the effect of the agreement was to require the delivery of stock certificates and it was within Gilchrist's power to cause this to be done, the trial court found that "Gilchrist . . . failed to deliver stock certificates" to Carroll. Where the agreement required various entities under Gilchrist's control to pay Carroll and no payment was made, the trial court found that "Gilchrist . . . failed to pay" Carroll.

---

[1] The trial court incorporated findings of fact in the judgment. We have held that findings improperly included in a judgment and not supplanted by findings filed separately under Texas Rules of Civil Procedure 297 and 298 "still have probative value and are valid as findings." *In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The evidence supports the trial court's judgment. To summarize it broadly, Carroll presented evidence that he and Gilchrist established Goldbridge Capital, LLC in 2000. Carroll paid Gilchrist's salary, often in the form of loans through other corporations. Through Goldbridge Capital, Carroll and Gilchrist made two other corporations into public shell companies. These companies were American Enterprise Development Corp. and Cyber Law Reporter, Inc. Because Gilchrist and Carroll were unable to sell these corporations before Carroll decided to end his involvement with Goldbridge Capital, the two men entered into the agreement at issue to provide for Carroll's repayment for the capital and labor that benefitted these and other companies. They therefore agreed that Goldbridge Capital's shares and receivables from American Enterprise Development Corp. and Cyber Law Reporter would be distributed to them, and if either company were to be involved in a merger or acquisition, then Carroll would share in any "cash, note, or other compensation related to the transaction."

Carroll introduced evidence that Gilchrist did not make payments or deliver stock certificates as required, and in some instances, caused compensation related to transactions covered by the agreement to be directed to companies under his control. For example, Cyber Law Reporter was involved in a reverse merger, and Carroll presented evidence that Gilchrist caused the compensation that should have been shared with Carroll to be delivered to two companies in which Gilchrist was the president, director, and controlling shareholder. The compensation was in the form of stock, and although Gilchrist assigned some of it to other people, he caused none of it to be delivered to Carroll. Carroll also introduced Gilchrist's deposition, and the trial court was free to draw negative inferences from the fact that, in response to any questions concerning any party or transaction in this case, Gilchrist invoked his Fifth Amendment right against self-incrimination. *See Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (per curiam) (rendering judgment in accordance with verdict for plaintiff where plaintiff's evidence consisted of inferences

5

drawn from tracing funds and defendant repeatedly invoked Fifth Amendment). Because this evidence is sufficient to support the judgment, we overrule Gilchrist's first issue.

**B.      Judgment as to Hepplewhite Corporation and Goldbridge Consulting, LLC**

In his second issue, Gilchrist argues that the trial court erred in finding Hepplewhite Corporation and Goldbridge Consulting, LLC liable to Carroll because the companies were not parties to the agreement. Gilchrist, however, lacks standing to raise this issue. An appellant "'may not complain of errors which do not injuriously affect him or which merely affect the rights of others.'" *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150 (Tex. 1982) (quoting *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973)). Neither of these corporations appealed the judgment, and Gilchrist is not adversely affected by the judgment holding them jointly and severally liable to pay damages for which he also is liable. We therefore do not address the merits of Gilchrist's second issue.

**C.      Judgment as to American Enterprise Development Corporation**

American Enterprise Development Corporation also appealed the judgment, but did not file a brief. We therefore accept Carroll's brief as correctly presenting the case as it pertains to this company, and we affirm the judgment against it. *See* TEX. R. APP. P. 38.8(a)(3).

6

## V. CONCLUSION

Because the evidence is legally sufficient to support the imposition of liability directly against Gilchrist as an individual, and no other issues have been properly raised for our review, we affirm the trial court's judgment.

/s/     Tracy Christopher
Justice

Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.